# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| ROY MCGOWN, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:13-CV-148 |
| | ) |
| JAMES ARNOLD, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court[1] on the motions *in limine* filed by Plaintiff Roy McGown, Jr. (Docket # 34, 35), and Defendants City of Fort Wayne and Fort Wayne Police Officers James Arnold, Douglas Weaver, and Chris Felton (Docket # 33). For the following reasons, the motions *in limine* will each be GRANTED IN PART and DENIED IN PART.

## I. FACTUAL AND PROCEDURAL HISTORY

McGown is suing Defendants under 42 U.S.C. § 1983 for use of excessive force in violation of the Fourth Amendment and for state law battery, or in the alternative, for failure to intervene to prevent the use of excessive force. McGown's claims arise out of events that occurred on or about October 1, 2011, around 2:30 a.m., when he pulled over while driving in the area of Wayne Trace and Oxford Street in Fort Wayne, Indiana, because he allegedly became ill. McGown contends that the Officer Defendants approached his vehicle while it was stopped southbound on Wayne Trace, and then used excessive force against him until he became unconscious. He contends that when he awoke, he was in the hospital emergency room with injuries to his ribs and head. (*See* Docket # 36.)

---

[1] Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (Docket # 8.)

Defendants dispute McGown's version of events. According to Defendants, McGown was intoxicated and passed out in a running vehicle stopped in a travel lane at an intersection. Defendants claim McGown ignored the Officers' instructions to exit the vehicle, and then violently and forcefully resisted the Officers' efforts to remove him from the vehicle, direct him to the ground, and handcuff him. Defendants contend that the force they used was reasonable to gain control of McGown. (*See* Docket # 37.)

## II. NATURE OF AN ORDER *IN LIMINE*

"A motion *in limine* is a request for guidance by the court regarding an evidentiary question." *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999) (Coffey, J., concurring in part and dissenting in part) (citation omitted). "Federal district courts have the power to exclude evidence *in limine* pursuant to their authority to manage trials." *Dartey v. Ford Motor Co.*, 104 F. Supp. 2d 1017, 1020 (N.D. Ind. 2000) (citation omitted).

"[A]s the term 'in limine' suggests, a court's decision on such evidence is preliminary in nature and subject to change." *Id.*; *see United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (emphasizing that an order either granting or denying a motion *in limine* is "a preliminary decision . . . subject to change based upon the court's exposure to the evidence at trial"). In fact, the Seventh Circuit Court of Appeals has specifically noted that "a ruling [*in limine*] is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the proffer." *Connelly*, 874 F.2d at 416 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

Thus, a ruling on a motion *in limine* is not a final ruling on the admissibility of the evidence that is the subject of the motion; rather, an order on a motion *in limine* is essentially an

advisory opinion, "merely speculative in effect." *Wilson*, 182 F.3d at 570-71 (citing *Luce v. United States*, 469 U.S. 38, 41 (1984)).

### III.  MCGOWN'S MOTION *IN LIMINE*

#### A.  *Unopposed Portions of McGown's Motion* in Limine *(Nos. 3-6)*

Defendants do not object to McGown's efforts to preclude references or allusions to attorney fees; settlement negotiations; tax considerations; or "send a message" arguments in opening or closing statements.  As such, McGown's motion is GRANTED as to these matters.

#### B.  *Narrative Reports of the Officer Defendants (No. 1)*

McGown first seeks to bar any narrative reports by the Officer Defendants, claiming they are biased, prejudicial, and constitute inadmissible hearsay.  In response, Defendants contend that the reports are admissible under Federal Rules of Evidence 803(8) (public records and reports) and 803(5) (recorded recollection).

The reliability of police reports is "neither automatic nor presumed." *Downie v. Klincar*, 759 F. Supp. 425, 428 (N.D. Ill. 1991).  "Police reports of any kind are inherently more subjective than laboratory reports of chemical tests, and . . . a police officer's description of events as he witnessed them lacks . . . objective certainty . . . ." *Id*. (citations and internal quotation marks omitted).  They "may be demonstrably reliable evidence of the fact that an arrest was made, [but] they are significantly less reliable evidence of whether the allegations of criminal conduct they contain are true." *Id*. (alteration in original) (quoting *United States v. Bell*, 785 F.2d 640, 644 (8th Cir. 1986)).  Indeed "such evidence is 'dripping with motivations to misrepresent' and accordingly lacks the trustworthiness necessary to qualify under the business records exception." *Id*. (citation omitted).

Presumably, the narrative reports may indeed be admissible, at least in part, under Rule

3

803(8) as public records and reports, although certain hearsay statements within the reports may need to be redacted.  However, without having an opportunity to rule in the context of the trial, the admissibility of the documents and the prejudicial effect of the imbedded statements cannot be ascertained.  Therefore, at this juncture, McGown's motion *in limine* is GRANTED.  Counsel are directed to confer in an effort to reach a stipulation concerning suitable redactions.  Moreover, until Defendants have laid a proper foundation, such narrative reports may not be read into evidence under Rule 803(5).

### C.  McGown's Criminal Record (No. 2)

McGown also attempts to preclude evidence regarding his criminal record, particularly any prior convictions, arrests, or other alleged bad acts.  In response, Defendants contend that if any criminal convictions fall within Federal Rule of Evidence 609(a), they are admissible at trial for impeachment purposes.

But neither party has informed the Court if McGown has *any* criminal convictions, let alone those that fall within Rule 609(a).  As such, until McGown's criminal convictions, if any, are revealed to the Court, the motion is GRANTED with respect to this evidence.

The only arrests that the parties refer to are those arising from the subject incident, which are Resisting Law Enforcement, Possession of Marijuana, Possession of Paraphernalia, and Operating a Vehicle While Intoxicated.  Arrests that did not lead to a conviction are usually inadmissable under Rule 403's balancing test and Rule 404(b)'s bar against character evidence.  *See Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1024 (N.D. Ill. 2011).

The Court agrees with McGown that the charges brought against him as a result of the subject incident should not be admitted.  McGown is not making a false arrest or malicious prosecution claim.  The only issue in dispute is whether, in light of the facts and circumstances

known to them at the time, the Officers' use of force against McGown was objectively reasonable. *See Sallenger v. Oakes*, 473 F.3d 731, 742 (7th Cir. 2007). Whether McGown was later charged with a crime is irrelevant to whether the amount of force the Officers used in arresting him was excessive. Furthermore, significant prejudice or confusion could arise if the jury seeks to retroactively gauge the reasonableness of the Officers' use of force against the knowledge that criminal charges were later lodged by the prosecuting attorney. Fed. R. Evid. 403.

Defendants will, however, be permitted to testify about why they arrested McGown, as that would be relevant to the reasonableness of the force used. Fed. R. Evid. 402; *see Payton v. Fike*, No. 1:09-cv-222, 2010 WL 4065601, at *3 (N.D. Ind. Oct. 15, 2010). This includes that McGown was arrested for operating a vehicle while intoxicated, which speaks to his ability to observe, recall and recount the events surrounding the alleged use of excessive force. *See Casares v. Bernal*, 790 F. Supp. 2d 769, 785-87 (N.D. Ill. 2011) ("Where there is reason to believe that alcohol or marijuana had seriously impaired a witness's memory of the events to which he is testifying or prevented him from understanding the events at the time they occurred, evidence of his drug or alcohol use is admissible.").

Therefore, McGown's motion *in limine* is GRANTED in part and DENIED in part with respect to this evidence.

### IV. DEFENDANTS' MOTION *IN LIMINE*

*A. Unopposed Portions of Defendants' Motion* in Limine *(Nos. 4, 5, and 9)*

McGown does not object to Defendants' efforts to preclude references or allusions to settlement negotiations, whether the City of Fort Wayne will likely be paying for any judgment against the Officer Defendants, or McGown's "hearsay statements." As such, Defendants' motion is GRANTED as to these matters.

### B. Citizen Complaints, Other Criminal or Civil Actions, or Discipline Against the Officer Defendants and Information Contained in the Officers' Personnel Files with the Fort Wayne Police Department ("FWPD") (Nos. 1-3)[2]

Defendants seek to exclude evidence of criminal and civil actions, citizen complaints, or discipline taken against the Defendant Officers Arnold, Weaver, or Felton during their tenure as law enforcement officers. Defendants argue that the probative value of any such legal actions or complaints is substantially outweighed by the prejudice to Defendants, and thus, should be excluded under Rule 403.

In response, McGown contends that any prior criminal or civil actions or discipline that were administered to Officers Arnold, Weaver, or Felton constitute evidence of habit and routine practice admissible under Rule 406, as well as evidence of prior crimes or bad acts admissible under Rule 404(b) to show *modus operandi*. In particular, McGown argues that Officer Arnold "has a habit of escalating his violence and using excessive and unreasonable force against male minorities who[] . . . were impaired or intoxicated." (Pl.'s Resp. 5.)

In support of this assertion, McGown describes two prior incidents involving allegations of excessive force where the aggrieved party was an African American male accused of being intoxicated; one incident occurred in June 2010 with Officers Arnold and Felton and the other in April 2010 with Officer Weaver. In addition, McGown cites Officer Arnold's use of excessive force against a mentally ill individual (of unknown race) in January 2013, which resulted in his thirty-day suspension; and allegations of use of excessive force in his shooting of a suspect

---

[2] The Court considers Defendants' Motion in Limine No. 1 to encompass their Motions in Limine No. 2 (Officer Arnold's Recent Thirty-Day Suspension; the Incident Occurring on January 31, 2013; FWPD's Finding that on January 31, 2013, Officer Arnold Used Excessive Force; Officer Arnold's Police Action Shooting; Any Prior or Current Lawsuits; and Any Settlement Amounts From Said Lawsuits) and No. 3 (Other Incidents Where Officers Felton, Weaver, or Arnold Used Force). Therefore, the Court's discussion and ruling on Motion in Limine No. 1 pertains to all three motions.

(minority, but non African-American) following a police pursuit in 2007.

"[B]efore a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Thompson v. Boggs*, 33 F.3d 847, 854 (7th Cir. 1994) (alteration in original and citation omitted). Here, McGown attributes just one other instance of excessive force to Officers Weaver and Felton, and three other instances of excessive force to Officer Arnold spanning a seven-year time frame. These encounters, standing alone, fall short of the necessary "degree of specificity and frequency" to admit evidence of habit or routine practice under Rule 406. *See id.* at 855 (finding that five incidents failed to demonstrate a habit of using excessive force, absent any evidence of the total number of contracts the officer had with citizens or the number of arrests he performed).

And as to Rule 404(b), McGown does not provide sufficient evidence that the Officer Defendants' alleged prior bad acts "bear a singular strong resemblance" to McGown's allegations of use of excessive force or battery. *Treece v. Hochstetler*, 213 F.3d 360, 363 (7th Cir. 2000) (citations and internal quotations marks omitted). Consequently, McGown's purported "modus operandi evidence becomes nothing more than the character evidence that Rule 404(b) prohibits." *Id.* (citation omitted).

Furthermore, under Rule 403, the probative value of any prior or subsequent legal actions or complaints involving the Officer Defendants is substantially outweighed by the likelihood of causing a trial of those events within the trial of the principal action, undue delay, jury confusion, and unfair prejudice to Defendants. Accordingly, Defendants' motion *in limine* is GRANTED with respect to this evidence.

7

### C. Testimony That the Officers Used "Excessive Force" (No. 6)

Defendants seeks to prevent McGown and his witnesses from testifying that the Officers used "excessive force" against him. But McGown asserts that his lay opinion concerning the Officers' use of excessive force is relevant and based on first-hand knowledge, and thus, admissible.

Contrary to McGown's assertion, the Seventh Circuit has held that "lay testimony offering a legal conclusion is inadmissible because it is not helpful to the jury, as required by Rule 701(b)." *United States v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009). The purpose of a lay witness is to inform the jury what is in the evidence, "not to tell it what inferences to draw from that evidence." *Id*. Although McGown and any witness to his arrest may testify about what they observed, they cannot attach legal labels such as "excessive" or "unreasonable" to the Officers' actions. *See Larsen v. Barrientes*, No. 1:09-cv-55, 2010 WL 2772325, at *3 (N.D. Ind. July 12, 2010); *Norman v. City of Lorain*, No. 1:04-cv-913, 2006 WL 5249724, at *4 (N.D. Ohio Nov. 16, 2006). Therefore, Defendants' motion in limine is GRANTED with respect to this evidence.

### D. Information That Was Not Disclosed Under Federal Rule of Civil Procedure 26(e) (No. 7)

Next, Defendants argue that McGown should not be able to introduce, admit, or argue any information that he failed to provide pursuant to Federal Rule of Civil Procedure 26(e). McGown objects, emphasizing that it would prevent him from using appropriate rebuttal evidence or witnesses. Indeed, undisclosed witnesses may testify in rebuttal because the need for rebuttal witnesses cannot always be anticipated and depends on what is introduced by the adversary. *United States v. Gasparik*, 141 F. Supp. 2d 361, 368-69 (S.D.N.Y. 2001).

The only information that Defendants specifically mention in the context of this motion is the video from the Officers' in-car camera. Defendants state that McGown listed in his Rule

26(e) disclosures the video used at his criminal trial, which purportedly is an edited version rather than the entire video. McGown, however, denies that he has an edited version of the video. After briefing the issue, the parties seem to agree, and the Court does as well, that the entire in-car video, not an edited version of it, should be shown to the jury. Therefore, this motion is GRANTED.

### E. The Outcome of McGown's Criminal Charges (No. 8)

Defendants also argue that McGown's acquittal from all the criminal charges is irrelevant to whether they used excessive force against him and should therefore be excluded at trial. They emphasize that the determination whether the Officers used excessive force must be judged solely on the facts and circumstances known to the Officers at the time of the arrest, not those presented in a later criminal proceeding. In response, McGown asserts that if Defendants are allowed to introduce evidence of his arrest but he is barred from showing that he was later acquitted of all charges at a criminal trial, a chronological and conceptual void will occur, leading to jury confusion.

Defendants are correct; the outcome of McGown's criminal case is not relevant to the issue of whether Defendants used excessive force against him. "The only issue in dispute is whether, in light of the facts and circumstances known to them at the time, [the Officers'] use of force against [McGown] was objectively reasonable." *Ward v. Tinsley*, No. 1:10-cv-329, 2011 WL 6151602, at *2 (N.D. Ind. Dec. 12, 2011) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Sallenger*, 473 F.3d at 742); *see Ochana v. Flores*, 347 F.3d 266, 272 (7th Cir. 2003) ("It was not an abuse of discretion for the court to grant the officers' motion *in limine* to bar . . . the disposition of the underlying criminal charges, because these were not facts within the officers' knowledge at the time of the arrest . . . ."); *Currier v. Baldridge*, 914 F.2d 993, 996 (7th Cir.

1990) ("[T]he mere fact that [plaintiff] was acquitted of the crime for which he was initially arrested does not lead to section 1983 liability for the arresting officer."). "[The totality of the circumstances] includes information which the officer had at the time of his actions, but not information uncovered later." *Deering v. Reich*, 183 F.3d 645, 650 (7th Cir. 1999).

Moreover, a jury may equate McGown's acquittal from the resisting arrest charge with complete exoneration, and therefore, impermissibly determine that Defendants used excessive force against him. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 755 (7th Cir. 2005) ("Evidence of acquittal in a criminal action is generally irrelevant and inadmissible in a civil case involving the same incident since it constitutes a negative sort of conclusion lodged in a finding of failure of prosecution to sustain the burden of proof beyond a reasonable doubt." (internal quotation marks and citation omitted)). Thus, under Rule 403, the probative value of this evidence does not outweigh the risk that such evidence will confuse and mislead the jury and unduly prejudice Defendants. Accordingly, Defendants' motion *in limine* is GRANTED with respect to this evidence.

### F. Testimony That McGown Had a Stroke or That the Subject Incident Caused His Alleged Stroke (No. 10)

Defendants seek to preclude any evidence or testimony that McGown suffered a stroke eleven to twelve days after his arrest, and any lay testimony from McGown or others that his arrest proximately caused the stroke.

Matters of causation generally necessitate expert testimony. *See Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863-64 (7th Cir. 2010); *Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 821 (N.D. Ill. 2010). But here that avenue is closed to McGown because he never disclosed any expert witnesses under Federal Rule of Civil Procedure 26(a)(2), including any treating

10

physicians, and the time to do so passed long ago. *Brown v. City of Fort Wayne*, No. 1:09-cv-150, 2011 WL 2690470, at *4 (N.D. Ind. July 11, 2011); *see* Fed. R. Civ. P. 26(a)(2)(D); *see generally Musser v. Gentiva Health Servs.*, 356 F.3d 751 (7th Cir. 2004) (citing *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 n.14 (7th Cir. 1994) (noting that treating physicians are not exempt from the requirements of Federal Rules of Evidence 702 and 703 because "we do not distinguish the treating physician from other experts when the treating physician is offering expert testimony regarding causation")).

Defendants further argue that under Federal Rules of Evidence 701 and 702, testimony from McGown or any other lay witness about the causation of McGown's alleged stroke is beyond his, or their, knowledge and qualifications. Under Rule 701, a lay witness may offer opinion testimony to the extent that it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Therefore, a lay witness is entitled to testify about his "own perceptions, including the physical and emotional effects of the defendants' alleged conduct." *Christmas*, 691 F. Supp. 2d at 821. He "cannot, however, offer medical opinions that require scientific, technical, or other specialized knowledge," or "give any complex medical diagnoses or opine on any long term medical conditions." *Id*.

Thus, McGown may testify about his own perception of his physical and mental health, before and after the incident. *See Collins v. Kibort*, 143 F.3d 331, 337 (7th Cir. 1998) ("A witness does not need to be a doctor to discuss his or her health in general terms."). This includes recounting any pain, fear, or anxiety he experienced during those times. *See Hendrickson v. Cooper*, 589 F.3d 887, 893 (7th Cir. 2009) (allowing plaintiff to describe pain resulting from

attack where there is "no . . . complicated question of medical causation"); *Holleman v. Duckworth*, 700 F.2d 391, 395 (7th Cir. 1983) (permitting plaintiff's testimony as to his own medical symptoms).

McGown may not, however, testify as to any diagnosis or condition. *Cooper v. Dailey*, No. 07 C 2144, 2012 WL 1748150, at *7 (N.D. Ill. May 16, 2012); *see Haack v. Bongiorno*, No. 08 C 2488, 2011 WL 862239, at *3-4 (N.D. Ill. Mar. 4, 2011) (precluding plaintiff from offering a detailed medical diagnosis (or self-diagnosis) of his alleged injuries). The fact that McGown later suffered a stroke (which may become relevant if he claims his injuries from the arrest persisted longer than eleven or twelve days) may be admissible upon proper medical testimony.

No witness, however, shall be permitted to opine that the arrest proximately caused the stroke. *United States v. Cravens*, 275 F.3d 637, 640 (7th Cir. 2001) ("Although a lay person may readily observe a [health] problem, the *causation* of a mental disease or defect is a more technical medical determination such that a court would find expert testimony particularly useful to its ultimate decision." (emphasis in original)); *see Mattioli v. Media News Group*, No. Civ. 97-cv-4846, 1999 WL 729255, at *1 (E.D. Pa. Sept. 8, 1999) (precluding plaintiff from testifying about the cause of his stroke). Accordingly, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## V. CONCLUSION

For the foregoing reasons, Defendants' and Plaintiff's motions *in limine* (Docket # 32, 35) are each GRANTED IN PART and DENIED IN PART as set forth herein. It is therefore ORDERED that counsel, those acting on behalf of the parties, and any witnesses shall not refer to the matters excluded pursuant to this Opinion and Order, either directly or indirectly, during voir dire, opening statements, interrogation of witnesses, objection, arguments, closing statements, or

otherwise, without first obtaining permission of the Court outside the presence or hearing of the jury. Counsel are further ORDERED to warn and caution each and every one of their witnesses to strictly follow these instructions.

SO ORDERED.

Enter for the 30th day of October, 2014.

S/Roger B. Cosbey<br>
Roger B. Cosbey,<br>
United States Magistrate Judge